1   SEYFARTH SHAW LLP
    William J. Dritsas (SBN 97523)
2   wdritsas@seyfarth.com
    560 Mission Street, 31st Floor
3   San Francisco, California 94105
    Telephone:    (415) 397-2823
4   Facsimile:    (415) 397-8549

5   SEYFARTH SHAW LLP
    David Kadue (SBN 113578)
6   dkadue@seyfarth.com
    2029 Century Park East, Suite 3500
7   Los Angeles, California 90067
    Telephone:    (310) 277-7200
8   Facsimile:    (310) 201-5219

9   SEYFARTH SHAW LLP
    Emily Schroeder (SBN 274257)
10  eschroeder@seyfarth.com
    333 S. Hope Street, Suite 3900
11  Los Angeles, California 90071
    Telephone:    (213) 270-9600
12  Facsimile:    (213) 270-9601

13  Attorneys for Defendant
    COSTCO WHOLESALE CORPORATION
14

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17

18  LILIANA CANELA, individually and on behalf of    Case No. 5:13-cv-03598-BLF
    all others similarly situated,
19                                                    **COSTCO'S REPLY IN SUPPORT OF**
                    Plaintiff,                        **MOTION FOR PARTIAL SUMMARY**
20                                                    **JUDGMENT [Fed. R. Civ. P. 56]**
            v.
21                                                    **Date:          March 1, 2018**
    COSTCO WHOLESALE CORPORATION, and                 **Time:          9:00 a.m.**
22  DOES 1 through 10, inclusive,                     **Location:      Courtroom 3, 5th Floor**
                                                      **               280 South First Street**
23                  Defendants.                       **               San Jose, California 95113**

24

25

26

27

28

# TABLE OF CONTENTS

Page

Summary of Reply ................................................................................................................. 1

Argument .............................................................................................................................. 2

I.  Canela lacks Article III standing to represent unnamed third parties. ........................... 2

II.  Canela cannot, absent Rule 23 certification, represent unnamed third parties in federal court, because federal procedural law governs her action. ................................................ 4

III.  Canela cannot represent unnamed third parties, as her action would be unmanageable. .............. 7

    A.  *Kilby* and Labor Code section 2699 require an employee-specific assessment. ................ 7

    B.  Canela's own declarations highlight how the nature of the work performed at Costco's entrance and exit doors is highly individualized. ................................ 9

    C.  Canela's expert declaration highlights how the impact on member service may also be individualized. ........................................................................ 11

    D.  Canela's declarations highlight the need for individualized inquiries as to who was provided a seat. ............................................................................ 11

    E.  Costco is not obligated to make Canela's purported class ascertainable. ................ 12

IV.  This Court maintains jurisdiction over Canela's individual claim. ............................... 13

Conclusion .......................................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Luxottica U.S. Holdings Corp.*,
    2009 WL 7401970 (C.D. Cal. July 24, 2009) ..................................................................14

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*,
    46 Cal. 4th 993 (2009) ....................................................................................................3, 5

*Amaral v. Cintas Corp. No. 2*,
    163 Cal. App. 4th 1157 (2008) ...........................................................................................13

*Amiri v. Cox Communications California, LLC*,
    2017 WL 4400463 (S.D. Cal. Sept. 27, 2017) ....................................................................7

*Baumann v. Chase Inv. Services Corp.*,
    747 F.3d 1117 (2014) ...........................................................................................................5

*Broadway Grill., Inc. v. Visa Inc.*,
    856 F.3d 1274 (9th Cir. 2017) ...........................................................................................13

*Brown v. Wal-Mart Stores, Inc.*,
    651 Fed. Appx. 672 (9th Cir. 2016) .....................................................................................7

*Fiedler v. Clark*,
    714 F.2d 77 (9th Cir. 1983) .................................................................................................4

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013) .........................................................................................................4

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
    520 U.S. 939 (1997) .............................................................................................................6

*Iskanian v. CLS Transport Los Angeles, LLC*,
    59 Cal. 4th 348 (2014) ...........................................................................................2, 3, 4, 13

*Kilby v. CVS Pharmacy, Inc.*,
    63 Cal. 4th 1 (2016) .................................................................................................... *passim*

*Medlock v. Taco Bell Corp.*,
    2014 WL 4319510 (E.D. Cal. Aug. 29, 2014) ....................................................................6

*Quevedo v. Macy's, Inc.*,
    798 F. Supp. 2d 1122 (C.D. Cal. 2011) .............................................................................13

*Rowden v. Pacific Parking Systems, Inc.*,
    282 F.R.D. 581 (C.D. Cal. 2012) .......................................................................................12

*Sakkab v. Luxottica Retail North America, Inc.*,
    803 F.3d 425 (2015) .................................................................................................... *passim*

ii

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ........................................................................................................5, 6

*Warth v. Seldon*,
    422 U.S. 490 (1975) ............................................................................................................14

*Zackaria v. Wal-Mart Stores, Inc.*,
    142 F. Supp. 3d 949 (C.D. Cal. 2015) ................................................................................6

**Statutes**

Cal. Lab. Code §  2699 ...........................................................................................3, 5, 6, 7, 9, 15

Fed. R. Civ. P 23 ...............................................................................................................1, 4, 5, 6, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Summary of Reply**

"The 'nature of the work' [identified in Wage Order section 14] refers to *an employee's* tasks performed at a given location for which a *right* to a suitable seat is claimed." *Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1, 8 (2016) (emphasis added). Penalties for violations of this right may—"as an *alternative*" to the State seeking such penalties—"be recovered through a civil action brought by an aggrieved employee *on behalf of* … herself and *other current or former employees* pursuant to the *procedures* specified in Section 2699.3." An aggrieved employee is one "*against whom*" Section 14 was violated. The penalties owed are for "*each aggrieved employee per pay period*" during which such a "*violation*" occurred. Canela sues, under these provisions, for herself and other Costco door workers. Under these laws, her suit may result in monetary recovery for each aggrieved employee, based on how many pay periods include a violation of the employee's Section 14 rights.

But Canela lacks standing to sue for employees other than herself. Her PAGA suit is not akin to a *qui tam* action. In a *qui tam* action, the State *assigns* a private citizen the right to sue for wrongs done to the State itself. Any money recovered goes to the State and to the individual plaintiff alone. Nothing goes to unnamed third parties. In a PAGA action, by contrast, although the State has an interest in the action (as the plaintiff is helping the State enforce its laws), it is not the State's rights that are at issue. The State has no right to a suitable seat. This is why PAGA creates an *alternative* procedure, *not an assignment*: whether the suit is brought by the State or a private plaintiff, it is the rights of the plaintiff and unnamed third parties that are being enforced, not the rights of the State. Thus, the Article III exception that applies to *qui tam* claims (assignment) does not apply to PAGA claims and Canela lacks Article III standing to represent these unnamed third party employees.

The fact that Canela sues on behalf of others is the reason Rule 23 preempts PAGA's procedural arrangement. PAGA created an alternative *procedure* by which one aggrieved employee can sue for others to recover penalties for violations of those employees' rights. PAGA does not create any new rights; just a new procedure to enforce existing rights. In this situation, where one party sues in federal court as a representative for other, absent individuals, Rule 23 applies. That's why it's there.

Finally, because a decision to impose penalties would require individualized inquiries into

1

whether and when Costco violated the other employees' right to a suitable seat, Canela cannot manageably represent them. Specifically, the Court would need to analyze the actual tasks performed by each employee at the doors, how any sitting tasks would interfere with standing tasks, which pay periods each employee worked at the doors, which door each employee worked at, and whether each employee was provided a seat during any pay period at issue. Because the individual inquiries actually required would be overwhelming, this case cannot manageably proceed on a representative basis.

Argument

## I.     Canela lacks Article III standing to represent *unnamed third parties.*

Canela's only defense of her lack of Article III standing as to other employees is a resort to *Iskanian* and *Sakkab's* analogy between PAGA suits and *qui tam* actions. Dkt 45 at 5:10-8:2. But *Iskanian* and *Sakkab* simply address whether arbitration agreements can waive the right to bring representative PAGA actions. They do not address Article III standing. Nor does their logic translate to the Article III context.

*Iskanian* dealt with an arbitration agreement that waived the right to bring representative PAGA actions. *Iskanian v. CLS Transport Los Angeles, LLC*, 59 Cal. 4th 348, 378 (2014). *Iskanian* noted that a purpose of PAGA is to help the State of California enforce its labor laws. *Id*. at 379. *Iskanian* also noted that PAGA actions are a "type" of *qui tam* action, having some similarities to, and some differences with, *qui tam* actions. *Id*. at 382. *Iskanian* says that a representative PAGA claim waiver would frustrate PAGA's purpose of helping the State enforce is labor laws, and thus would be unenforceable as a matter of state law. *Id*. at 383-84. *Iskanian* also analyzed whether a PAGA waiver, unenforceable under state law, would nevertheless be preempted by the FAA. *Id*. at 384. *Iskanian* found against FAA preemption, because a PAGA suit—like a *qui tam* action—involves a *public interest*, and the FAA addresses only disputes between *private parties*. *Id*. at 386-87. Simply put, in both the *qui tam* context and in the PAGA context, private parties cannot contract to waive the State's interest.

But this analogy between *qui tam* actions and PAGA actions in the FAA context is not relevant to the Article III context, where the State's interest is not the only one at issue in PAGA claims. *Iskanian* recognizes this critical difference: "a portion of the penalty goes not only to the citizen bringing the suit

2

1   but to all employees affected by the Labor Code violation." *Id*. at 386. This difference is the reason why

2   Article III standing is lacking as to unnamed employees in a PAGA suit.

3      Specifically, in a *qui tam* action, the law being enforced gives rights to the State. For example, in

4   a False Claims Act suit, the right at issue is the State's own right to not be defrauded. A *qui tam* action is

5   the procedure whereby the State assigns a private citizen the State's own right to seek redress for a

6   wrong done to the State itself. Not so for PAGA suits. In a PAGA suit, the law being enforced—a Labor

7   Code or Wage Order provision—protects employee rights, not rights of the State. Here, the right at issue

8   is an employee's individual right to a suitable seat. *Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1, 8 (an

9   employee has a "right to a suitable seat" in a given location if the nature of the work she performs there

10  can reasonably be performed seated); Lab. Code § 2699(c) (aggrieved employee is one against whom an

11  alleged violation was committed). No one would argue the State has a right to a seat. PAGA thus creates

12  a penalty for each relevant violation of each employee's right to a seat, part of which is paid to the

13  employee herself. And that penalty is imposed based on the number of pay periods during which her

14  right to that seat was violated. Lab. Code § 2699(f)(2).

15     Even were the LWDA itself to bring a suitable seating claim, it would not be to enforce the

16  LWDA's rights, but to enforce an employee's right to a seat. Although the LWDA obviously has an

17  *interest* in enforcing the Labor Code provisions and Wage Orders it was established to protect, that

18  interest is not a right. The State in a PAGA suitable seating case, unlike the state in a *qui tam* case, has

19  no rights to assign. *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court,* 46 Cal. 4th

20  993, 943 (2009) ("the right to recover a statutory penalty may not be assigned"). That is why PAGA

21  calls for an "alternative" procedure, not an assignment. Lab. Code § 2699(a). Because there is no

22  assignment here, the reason Article III standing exists in *qui tam* actions does not apply. See also

23  Costco's opening brief, Dkt 44 at 10:17-17:22.

24     *Sakkab* does not change this analysis. The Ninth Circuit in *Sakkab* held that the rule set forth in

25  *Iskanian*—invalidating arbitration clauses that waive rights to bring representative PAGA claims—

26  applies in federal court. *Sakkab v. Luxottica Retail North America, Inc.,* 803 F.3d 425, 439 (2015). First,

27  *Sakkab* looked at the FAA's savings clause, which gives room to state contract defenses that invalidate

28

3

all contracts and do not discriminate against arbitration agreements. *Id*. at 432. As the *Iskanian* rule would apply to all contracts, that rule qualified under the FAA's savings clause and thus could permissibly invalidate representative PAGA waivers in arbitration agreements. *Id*. Second, *Sakkab* held that the FAA did not preempt the *Iskanian* rule. *Id*. at 433-34. *Sakkab* reasoned that there was no direct conflict between the two: *Iskanian* allows for arbitration of PAGA claims, it merely limits the ability to waive the right to bring representative PAGA claims. *Id*. at 439. Its reference to *Iskanian's* analogy between PAGA actions and *qui tam* claims was only for the purpose of saying that the right to bring *qui tam* claims also could not be waived by contract. *Id*. Again, this is because private parties cannot contract to waive the State's interest. *Sakkab's* logic thus does not suggest that PAGA claims are excepted from Article III standing requirements.

Finally, in the standing context, it does not matter what the State's purpose was in creating the statute. *Fiedler v. Clark*, 714 F.2d 77, 80 (9th Cir. 1983) ("However extensive their power to create and define substantive rights, the states have no power to enlarge or contract federal jurisdiction."); *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) ("[N]o matter its reasons, the fact that a state thinks a private party should have standing to seek relief for a generalized grievance cannot override our settled law to the contrary."). Thus, that PAGA was created in part to help California enforce its labor laws is irrelevant to whether Canela has Article III standing to represent unnamed third parties in this federal court action.

## II. Canela cannot, absent Rule 23 certification, represent unnamed third parties in federal court, because federal procedural law governs her action.

Plaintiff cites *Sakkab* to suggest that representative PAGA claims in federal court need not satisfy Rule 23 to proceed as such. Dkt 45 at 8:9-15. But, again, *Sakkab* is irrelevant. *Sakkab* addresses whether arbitration agreements can waive the right to bring representative PAGA actions in federal court, not whether Rule 23 applies to PAGA claims being litigated in federal court. Its comparison between the procedures required in a Rule 23 class action and a state-court PAGA action explains why arbitration agreements can waive the right to represent others in class actions but not in PAGA actions. 804 F.3d at 435-36. Specifically, *Sakkab* explained that the right to bring a representative PAGA action,

4

1    unlike a class action, cannot be waived, because private parties cannot contract to waive the State's

2    interest. *Id.*

3          *Sakkab* does not address the issue of import here: whether Rule 23 occupies the same procedural

4    space as PAGA, such that Rule 23 applies in federal court. *Shady Grove Orthopedic Associates, P.A. v.*

5    *Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (federal procedural law applies in federal court). Here, it is

6    clear that PAGA is a procedural statute. *Amalgamated*, 46 Cal. 4th at 1003 ("PAGA does not create

7    property rights or any other substantive rights. Nor does it impose any legal obligations. It is simply a

8    procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code

9    violations—that otherwise would be sought by state labor law enforcement agencies."). It creates a

10   procedure by which an employee can recover money for herself and other "aggrieved" employees for

11   violations of existing rights created by the Labor Code or Wage Order. Lab. Code § 2699(a), (c). Indeed,

12   each aggrieved employee in a PAGA action stands to recover penalties based on the number of pay

13   periods during which the employee experiences violations of preexisting Labor Code or Wage Order

14   rights. *Id.* at § 2699(i). See also Costco's opening brief, Dkt 44 at 17:23-20:6. The fact that PAGA

15   procedures differ from Rule 23 procedures does not somehow divest PAGA of its character as a

16   procedural statute. As a procedural statute, invoked in federal court, PAGA is trumped by Rule 23.

17         The Court should decline to follow the few cases Canela cites (Dkt 45 at 8:17-28) to the effect

18   that Rule 23 does not apply to representative PAGA actions in federal court. First, those cases

19   mistakenly rely on *Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117 (2014). The issue in *Baumann*

20   was "simply one of statutory construction—whether the [PAGA] action sought to be removed was 'filed

21   under; a state statute 'similar' to Rule 23." *Id.* at 1124. That is not the issue here: whether Rule 23

22   occupies the same procedural space as PAGA. Indeed, *Baumann* cited *Shady Grove* for the express

23   purpose of highlighting the difference between the *Baumann* issue of statutory construction and the

24   *Shady Grove* issue of whether a state statute is preempted by a federal procedural statute in federal court.

25   747 F.3d at 1124. *Baumann* specifically did not decide "whether a federal court may allow a PAGA

26   action otherwise within its original jurisdiction to proceed under Rule 23 as a class action." *Id.* Thus, it

27

28

5

1    does not matter here that PAGA's procedures are not identical to Rule 23; it matters that PAGA is a

2    procedure permitting representation of others, a procedure that Rule 23 preempts in federal court.

3        Second, Canela's cases inappropriately rely on the State's purpose in enacting PAGA. That

4    purpose is irrelevant. *Shady*, 559 U.S. at 407 ("it is not the substantive or procedural nature or purpose

5    of the affected state law that matters, but the substantive or procedural nature of the Federal Rule.");

6    *Medlock v. Taco Bell Corp.,* 2014 WL 4319510 (E.D. Cal. Aug. 29, 2014), at *7-8 ("the characterization

7    and treatment of PAGA claims under state law is irrelevant to the question of whether Rule 23 applies to

8    a PAGA claim brought in federal court"; "the Supreme Court has rejected the argument that Rule 23

9    violates the Rules Enabling Act because the state law it displaces creates a substantive right. The

10   Supreme Court stated that 'the substantive nature of [state's] law, or its substantive purpose, *makes*

11   *no difference*.' ").

12       Finally, the logic of cases characterizing PAGA as substantive is faulty, and does not matter in

13   terms of the *Shady Grove* analysis. These cases, likening PAGA actions to *qui tam* actions, state that

14   both types "set out a procedural mechanism that is often 'characterized as a substantive right to pursue a

15   claim for relief.' " *See Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 956 (C.D. Cal. 2015).

16   Isn't "substantive right to pursue a claim for relief" just a convoluted way to say procedure? Under this

17   logic, a class action statute would also be substantive, as it is a procedural mechanism that creates a right

18   to pursue a claim for relief. We all know Rule 23 applies over state class action rules in federal court.

19   Moreover, the *Shady Grove* test "is not whether the rule affects a litigant's substantive rights; most

20   procedural rules do. If [the rule] governs only the manner and the means by which litigants rights are

21   enforced, it is [procedural]." Here, PAGA provides an alternative procedure whereby a private citizen,

22   instead of the LWDA, can bring a claim for alleged violations of employees' preexisting rights.

23   Amalgamated, 46 Cal. 4th at 943 (PAGA "is simply a procedural statute allowing an aggrieved

24   employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by

25   state labor law enforcement agencies."). It is thus a state procedural rule, preempted by Rule 23.[1]

26

27   [1] A case mistakenly relied upon by the authority that Canela cites is *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 948 (1997). *Hughes Aircraft* does not characterize *qui tam* statutes as

28   substantive in any Rule 23 context; it addresses it in terms of retroactivity of a statute. Rule 23 does not apply in *qui tam* claims: the individual bringing the claim was assigned the right to do so by the State

6

1

## III.   Canela cannot represent unnamed third parties, as her action would be unmanageable.

Costco does not seek, in this motion, a ruling on whether the nature of Canela's work at the entrance or exit doors, or the nature of any other employee's work at those locations, could reasonably be performed seated.[2] Costco instead seeks a ruling that this particular issue cannot be manageably decided on a representative basis as to the myriad-plus employees at issue.[3] As argued in Costco's opening brief (Dkt 44 at 20:7-24:21), and as further argued below, the Court should issue such a ruling.[4]

### A.   *Kilby* and Labor Code section 2699 require an employee-specific assessment.

Canela suggests that *Kilby* calls for ignoring the work actually performed and instead looking at only at the common tasks that all employees perform at a particular location. She is incorrect. Indeed, *Kilby* expressly rejects the task-specific assessment that Canela proposes.

*Kilby* is clear that the suitable seating inquiry requires analysis of ***an employee's actual*** tasks: the " 'nature of the work' refers to ***an employee's*** tasks performed at a given location for which a right to a suitable seat is claimed." *Kilby*, 63 Cal. 4th at 8 (emphasis added). And the "reasonableness standard, and its attendant flexibility, was intended to balance ***an employee's*** need for a seat with an employer's considerations of practicality and feasibility." *Id*. at 13. Moreover, "[w]hen evaluating whether the 'nature of the work reasonably permits the use of seats,' courts must examine subsets of ***an employee's*** total tasks and duties by location, such as those performed at a cash register or a teller window, and consider whether it is feasible for ***an employee*** to perform each set of location-specific tasks while seated." *Id*. "***An employee*** may be entitled to a seat to perform tasks at a particular location

---

itself, and seeks to represent only one entity, the State. In such a case Rule 23, by definition, would not apply.

[2] Thus, Canela's citation to *Brown v. Wal-Mart Stores, Inc.*, 651 Fed. Appx. 672 (9th Cir. 2016) (Dkt 45 at 21-22), is irrelevant. *Brown* held that summary judgment could not be issued on whether the nature of the work reasonably permitted a seat, as that was a factual issue. Here, the issue is a different, legal one: whether this representative case is manageable.

[3] Canela's concern that Costco's declarations don't quantify the number of sitting vs. standing tasks is thus irrelevant. As is her assertion that Costco hasn't assessed Wage Order 14 since her lawsuit was filed. Those issues relate to the merits of whether the nature of her and others' work at the doors reasonably permits a seat, not the manageability of her representative claims.

[4] Canela implies that only old cases require representative PAGA actions to be manageable. Not so. *Amiri v. Cox Communications California, LLC*, 2017 WL 4400463 (S.D. Cal. Sept. 27, 2017)—decided less than four months before her most recent cited case—imposes a manageability requirement.

7

1   even if *his* job duties include other standing tasks, so long as provision of a seat would not interfere with

2   performance of standing tasks." *Id*. Finally, "the requirements of sections 14(A) and 14(B) are not

3   mutually exclusive in terms of the protections afforded to *a particular employee*." *Id*. "In sum, the

4   'nature of the work' … would include *an employee's* actual or expected tasks." *Id*. at 14.

5       This case-specific analysis of *actual* tasks performed by *an employee* requires consideration of

6   "the relationship between the standing and sitting tasks," "the frequency and duration of those tasks with

7   respect to each other, and whether sitting, or the frequency of transition between sitting and standing,

8   would unreasonably interfere with other standing tasks or the quality and effectiveness of overall job

9   performance." *Id*. at 13-14 The "inquiry is not a rigid quantitative analysis based merely upon counting

10  of tasks or amount of time spent performing them. Instead it involves a qualitative assessment of all

11  relevant factors." *Id*. at 15 "The weight given to any relevant factor will depend upon the attendant

12  circumstances." *Id*. Here, the frequency and duration of tasks performed at the entrance and exit doors,

13  and whether sitting, or the frequency of transition between sitting and standing, would unreasonably

14  interfere with other standing tasks or the quality and effectiveness of overall job performance, varies by

15  individual employee working in that location, as explained in Costco's opening brief (Dkt 44 at 4:7-

16  9:19, 20:7-24:21) and further exemplified below.

17      Indeed, *Kilby* specifically rejects Canela's position that a court must look only at the common

18  denominator of tasks that all employees perform at a particular location and decide whether those tasks

19  can reasonably be performed seated. *Kilby* found that this "task-by-task evaluation of whether a single

20  task may feasibly be performed seated" is "too narrow and likewise inconsistent with the language and

21  history" of the seating provision. *Id*. at 17. "Under this approach, if any single task could be performed

22  while seated, an employee would be entitled to a seat, even if the duration and frequency of the seated

23  task is negligible. That approach also fails to account for whether being seated would unduly interfere

24  with other standing tasks or the quality and effectiveness of overall job performance." *Id*. at 18. Of

25  course, many door workers performed tasks at the doors that Canela, for whatever reason, did not

26  perform. Thus, the duration and frequency of the alleged sitting vs. standing tasks of these employees

27

28

8

1   would differ from Canela's, as would the level of interference a seat would cause to their standing tasks

2   and the effectiveness of their job performance.

3          The one sentence of *Kilby* that Canela cites to suggest an employee-specific analysis is not

4   required (Dkt 44 at 8:25-28) is taken out of context. In this section, *Kilby* was addressing the defendants'

5   view that the nature of an employee's work should be viewed holistically, and not by looking at specific

6   tasks or work done at a particular location. *Id.* at 13-14. *Kilby* was concerned that this approach would

7   cause a stocker who sometimes works the cash register to not get a seat while working the cash register,

8   just because he spends more time stocking, while an employee who always works the register would get

9   a seat. *Id.* That's why *Kilby* held the "inquiry does not turn on the individual assignments given to each

10   employee," e.g., the stocker who also works the register, "but on consideration of the overall job duties

11   performed at the particular location," e.g., the register, "by any employee while working there." *Id.* at

12   13. Thus, a court must assess whether the nature of the stocker's work at the register reasonably

13   permitted a seat, just as it would need to assess whether the nature of the cashier's work at the register

14   reasonably permitted a seat. Here, the Court needs to look at each individual employee's work at both

15   the entrance and exit door locations.

16          Finally, Labor Code section 2699 also requires individualized inquiries. It defines an aggrieved

17   employee as one "against whom one or more of the alleged violations was committed." *Id.* at § (c). And

18   it entitles each aggrieved employee to a penalty based on the number of pay periods during which that

19   employee experienced a violation. *Id.* at § (f)(2). Thus, as to pay periods in which that employee did not

20   experience a violation (e.g., pay periods in which the employee used a seat or was on vacation or

21   worked at other locations), no penalty would be owed.

22          **B.     Canela's own declarations highlight how the nature of the work performed
23                   at Costco's entrance and exit doors is highly individualized.**

24          Canela and her two declarants[5] testify that they do not perform much of the work listed on the

25   Member Service Assistant job description when performing that role at the warehouse's entrance and

26   exit doors. Yet this is not so for other employees who work the doors.

27   _____

28   [5] Canela's two declarants each worked at only one of Costco's more than 120 warehouses in the state. Neither has established any foundation for any knowledge of the work performed by door workers at other warehouses or the policies or practices applied by management at other warehouses.

9

1   Canela does not approach members because she finds it "physically dangerous" to do so. Canela

2   Decl. 2:21-24. Nor does she walk with members to provide directions. Canela Decl. 3:21-25. But not all

3   door workers harbor Canela's apprehensions and make the same choices she does. Indeed, many door

4   workers do approach and walk with members. For example, Eugenia Castro approaches members to

5   check their receipts and to redirect them to the proper door. Castro Decl. 3:1-7. Francisco Fruto

6   approaches members to remove trash from their carts, to inform them their bag may be checked at the

7   exit, and to see membership cards. Fruto Decl. 2:9-19. Gary Gomez, from his wheelchair, pushes carts to

8   elderly members and brings members in the right direction when they can't locate an item. Gomez Decl.

9   2:26-3:1. Keith Johnson approaches members to see membership cards (and finds it important to

10  actually see the card) and walks with members to give them directions. Johnson Decl. 2:5-12, 2:20-24.

11  Similarly, Canela and her declarants state that it's the job of other people—often, members of the

12  cart crew—to remove trash from carts, dry carts, clean spills and trash, and plug in electric carts. Canela

13  Decl. 2:28-3:11; Vang Decl. 2:17-18. But this is not what the job description says. Canela Dep. 84:10-

14  85:1, Exh. 7. Nor is it how many other door workers perform the job. Castro Decl. 3:21-25 (walks

15  outside building to check if porch is dirty and if carts are ready for use, walks and bends to pick up trash,

16  sweeps the work area, and looks inside and outside building for spills, safety hazards, and suspicious

17  activity); Fruto Decl. 2:9-20, 3:8-12 (picks up trash, goes outside building to check for spills and trash,

18  pushes carts to members, plugs in electric carts, cleans up spills, dries member carts, and mops the

19  floor); Gomez Decl. 2:16-25, 3:25-4:2, 4:14-24 (cleans trash and spills, plugs in carts, dries carts, mops

20  floor); Johnson Decl. 2:25-3:2, 3:6-14 (picks trash off floor and out of carts and dries carts).

21  And other door workers, unlike Canela (Canela Decl. 4:11-13), find trash to pick up. Gomez says

22  he picks up a lot of trash, such as sample cups and discarded coupons, throughout his shifts. Gomez

23  Decl. 2:16-25, 4:3-7. Indeed, he says that members "use their carts like a trash can, leaving stuff like

24  papers and wrappers they don't want behind." *Id.* at 2:19-20. Johnson says the trash can get particularly

25  consuming when it rains on a coupon day, so that he is "wiping carts, handing out coupons, and cleaning

26  up soggy discarded coupons, in addition to all [his] other duties." Johnson Decl. 3:6-14.[6]

---

27

28

[6] See also Medina Decl. 2:1-23, 3:1-12; Riggins Decl. 2:21-3:12, 4:4-5, 4:7-8, 4:9-22; Valdovinos Decl. 2:1-24, 3:1-12.

10

Finally, the fact that entrance-door worker Bill Walker at Oxnard, during each half hour, moves during only 5-10 sporadic minutes does not mean that all entrance door workers move so infrequently, as Canela suggests. Dkt 45 at 4:16-22. Fruto, for example, moves 70% of the time when at the entrance door. Fruto Decl. 2:9. This observation again highlights why each employee's work at the doors must be assessed.

These differences show that the relationship between sitting and standing tasks performed at each door will vary by employee. It follows that whether the nature of the work at each door reasonably permits a seat will vary by employee. Of course, Canela cannot dispute that other employees do the job differently, as she is not aware of employee experiences at other warehouses, despite what her new declaration might suggest. Canela Dep. 22:17-23:4.

### C.    Canela's expert declaration highlights how the impact on member service may also be individualized.

Canela surveyed some San Jose shoppers, in the area where she works, to get their take on seating. Those shoppers, by and large, reportedly wouldn't mind seats. But all this survey shows, at this stage, is the existence of individual inquiries needed to see what effect seating would have on member service.[7] Results from two warehouses in a small area of Northern California do not establish that members at Costco's 120+ California warehouses would react the same way. Indeed, warehouse managers at some of those warehouses opine that their member base would react negatively. See Marmon Decl. 2:18-3:6; Richards Decl. 3:9-19.

### D.    Canela's declarations highlight the need for individualized inquiries as to who was provided a seat.

Was there a common policy to deny seats? The Canela declarations suggest to the contrary. They simply highlight the exercise of discretion by local managers. One of Canela's two employee declarants, Karen Rodriguez, who works at the member service desk, allegedly asked her local warehouse management for a seat at the door, but was told no. Rodriguez Decl. 2:9-21. The other, John Vang, a stocker temporarily assigned to the door, also allegedly asked his local warehouse management for a seat, and was told no. Vang Decl. 1:10-18.

---

[7] The many other problems with Canela's survey are beyond the scope of this motion, as they do not relate to the issue of manageability.

1   Conversely, other local warehouse management have permitted a seat at the door. Canela

2   testifies that an employee at her current San Jose warehouse works from a wheelchair. Canela Decl.

3   2:10-19.[8] As do employees at the Rancho Cucamonga (Gomez Decl. 1:11-18) and Fresno (Riggins Decl,

4   5:22-26) warehouses. Indeed, although Rodriguez was not provided a seat, another door worker at her

5   Hawthorne warehouse was. Rodriguez Decl. 4:1-4. Thus, Canela's own declaration suggestion not only

6   that was there no common policy of denying seats, but also that there was no uniform practice of

7   denying seats.

8   Thus, Canela's declarations merely highlight that one would need individualized inquiries to

9   determine who was and was not provided a seat, and when.

10   **E.    Costco is not obligated to make Canela's purported class ascertainable.**

11   Canela suggests that she, by merely filing her suit, put Costco under an affirmative duty to make

12   her purported class ascertainable. Dkt 45 at 17:11-17. But she cites no authority for this proposition. Of

13   course, there is none. Were that the case, every alleged class would become ascertainable merely by

14   being alleged. In an exempt misclassification case, for example, an employer would be required to begin

15   recording how much time each putative class member spends on exempt versus nonexempt tasks, to help

16   the plaintiff prove her case. That is not how it works.

17   On the contrary, "[a] class action is not manageable if membership of the class cannot be

18   sufficiently well-defined at the outset. A well-defined class must be not only precise, but also objective

19   and presently ascertainable. A serious, and perhaps insurmountable, manageability problem arises if

20   each member has to litigate separate issues to establish his or her right to recover individually." *Rowden*

21   *v. Pacific Parking Systems, Inc.*, 282 F.R.D. 581, 585 (C.D. Cal. 2012) (internal citations omitted). Here,

22   when Canela filed her action in 2012, her proposed class was not ascertainable. That is because Costco

23   did not record which employees worked at the doors, and when, and which door they worked at. Nor

24   was Costco required to do so. An employer need not records which particular task an employee

25   performs and at which particular time. The employer's general duty to record hours worked does not

26

27   ———————————
[8] Not all employees perceive the wheelchair-using door worker at Canela's warehouse as adequately
performing her job, like Canela does. Another San Jose door worker has seen this employee dozing off.
28   Medina Decl. 4:8-10.

12

extend to such particulars as the precise location of the work. Costco here has done as the law requires, by mandating its non-exempt employees to record their hours worked and paying them accordingly. Nothing more of relevant import was required here.

The case Canela cites, *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008), is a state appellate case that does not apply here. *Amaral* says it is appropriate to shift the burden of proving damages when "an employer's compensation records are so incomplete or inaccurate that an employee cannot prove his or he damages" and where the parties have unequal access to that evidence. *Id*. The court applied burden shifting for purposes of proving damages in that case because the defendant was required to pay differently for work performed on city vs. other contracts, but failed to records who worked on which contract and when. *Id*. Moreover, the contractors would not be aware of which contracts they were working on, so could not keep their own records. *Id*. Here, there is no issue of pay differentials. And individual employees were equally, if not more, suited to record or recall which door they worked at and when.

## IV.    This Court maintains jurisdiction over Canela's individual claim.

A determination that Canela cannot represent others will not affect this Court's jurisdiction. This case was removed under CAFA, under which federal jurisdiction is determined at the time of removal. *Broadway Grill., Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017). And this Court has already determined that Canela's post-removal decision not to seek certification does not divest it of jurisdiction. Dkt 41 at 6:23-7:16. Costco does not challenge Canela's standing to pursue her individual claims, so, just as would happen in a class action where certification is denied, this Court would retain jurisdiction over Canela's individual claims here.[9]

Canela uncharitably calls Costco "legally perverse" in suggesting that there can be an "individual suit under PAGA." Dkt 45 at 7:1-3. But of course there can be. Consider, for instance, an employer with

[9] The Ninth Circuit and California Supreme Court have not yet addressed whether a PAGA claim may be brought on an individual basis. *Iskanian*, 59 Cal. 4th at 384 (noting that it was not addressing whether an individual claim is permissible under PAGA); *Sakkab*, 803 F.3d at n.7 (*Iskanian* "declined to decide whether the PAGA authorizes purely 'individual' claims"). But courts do allow individual PAGA claims to proceed. *E.g.*, *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1141-42 (C.D. Cal. 2011) (employee may bring individual PAGA action and waive the right to bring it on behalf of other employees). Thus, this Court need not dispose of Canela's individual PAGA claim.

13

1   but one employee subject to a particular set of Labor Code violations. Would Canela deny that employee

2   the right to seek PAGA relief? Nothing in the language or structure of PAGA would support any such

3   stingy reading of the law. The only questions would be whether the plaintiff is an aggrieved employee

4   and whether a suit on behalf of other aggrieved employees would be manageable.

### Conclusion

6   Article III provides that a plaintiff "must assert his own legal rights and interests, and cannot rest

7   his claim to relief on the legal rights and interest of third parties." *Warth v. Seldon*, 422 U.S. 490, 499

8   (1975). If a plaintiff attempting to litigate in federal court cannot meet these requirement, she lacks

9   standing unless she proves … an "exception to the limitations on third-party standing." *Adams v.*

10  *Luxottica U.S. Holdings Corp.*, 2009 WL 7401970, at *6 (C.D. Cal. July 24, 2009). Here, because

11  PAGA creates an alternative procedure whereby private plaintiffs can enforce their own rights, and the

12  rights of unnamed third parties, in place of the State enforcing those rights, and not merely an

13  assignment of the State's rights alone, the assignment exception that applies to *qui tam* claims does not

14  apply. As Canela cannot establish an exception to Article III's requirement that she must assert only her

15  own legal rights and interests, she lacks standing to represent unnamed third parties here.

16  In this situation, where Canela is invoking PAGA as a procedure to enforce her own rights and

17  the rights of third party employees, PAGA is trumped by Rule 23's representative-action procedural

18  requirements in federal court.

19  Finally, as *Kilby* requires individualized inquiries into the nature of the work actually performed

20  by a particular employee at a given location and individualized inquiries into whether a seat could

21  reasonably be used by that employee at that location, Canela's representative action is unmanageable.

22  Specifically, the Court would need to assess the relationship between the standing and sitting tasks, the

23  frequency and duration of those tasks with respect to each other, and whether sitting, or the frequency

24  of transition between sitting and standing, would unreasonably interfere with other standing tasks or the

25  quality and effectiveness of overall job performance for each employee. It would also need to determine

26  which employee worked at which door and for what periods of time, and if and when a seat was

27

28

1  provided to each employee. The fact that Labor Code section 2699 ties penalties owed to the pay periods

2  during which each employee's rights were violated further exacerbates the manageability issue.

3        For these reasons, and those set forth in Costco's opening brief, Costco requests that the Court

4  grant its motion for partial summary judgment.

5  DATED: February 15, 2018                          SEYFARTH SHAW LLP

6

7                                                    By:  /s/ Emily Schroeder
8                                                         David D. Kadue
                                                          Emily Schroeder
9                                                    Attorneys for Defendant
                                                     COSTCO WHOLESALE CORPORATION
10 44317351v.3

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28