# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LILIANA CANELA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>COSTCO WHOLESALE CORPORATION, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 13-cv-03598-BLF<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Re: ECF 44] |

Plaintiff Liliana Canela brings this action against Defendant Costco Wholesale Corporation ("Costco") for allegedly failing to provide suitable seats to employees in violation of Labor Code § 1198 pursuant to California's Private Attorneys General Act ("PAGA"). Compl. ¶¶ 9–10, ECF 1. Before the Court is Costco's motion for partial summary judgment. Mot., ECF 44. Costco essentially requests the Court to issue a ruling that Canela "may proceed only on her own individual claim" as opposed to a "representative action." *Id.* at 24–25. Having considered the briefing and oral argument of the parties, as well as the governing law, the Court DENIES Costco's motion for partial summary judgment.

## I.    BACKGROUND

### A.    Costco and Its Employees

Costco is a membership-club retailer that sells merchandise and services out of warehouses. Mot. 2. Costco's warehouses have an entrance door and an exit door where one or more employees are stationed. *Id.* Employees who are classified as a "Member Service Assistant" work at the entrance and exit doors. *See* Ex. 3 to Schroeder Decl. ("Parks Dep.") 9:5–13, ECF 44-2. Member Service Assistants provide service to Costco's members (i.e., customers),

including directing members to product and service locations, assisting loading and shipping, and keeping the area clean. Mot. 4. Although Member Service Assistants are the employees whose job description specifies work at the entrance and exit doors, other employees have performed the function of Member Service Assistants from time to time. Ex. 8 to Schroeder Decl. ("Hernandez Decl.") ¶ 3, ECF 44-2; Ex. 4 to Schroeder Decl. ("Alexander Decl.") ¶ 2, ECF 44-2; Ex. 12 to Schroeder Decl. ("Richards Decl.") ¶ 3, ECF 44-2. Costco does not systematically record which employees work at which door on any given day or at any given time. *See* Parks Dep. 22:8–25; Ex. 5 to Schroeder Decl. ("Castro Decl.") ¶ 3, ECF 44-2; Richards Decl. ¶ 3; Ex. 10 to Schroeder Decl. ("Marmon Decl.") ¶ 2, ECF 44-2.

Canela worked at Costco's Santa Clara warehouse from 2002 to 2017 and then transferred to the Great Oaks warehouse.[1] Ex. 1 to Schroeder Decl. ("Canela Dep.") 14:1-15:3, ECF 44-2. During her employment, Canela was classified as a Member Service Assistant for a couple of months in 2013. *Id.* at 13:17-25, 56:3-8, 59:20-60:2, 60:18-21. She held that position as an accommodation for an injury. *Id.* At that time, Canela worked only at the entrance door. *Id.* at 59:20-60:2. After the two-month accommodation period in 2013, Canela worked about three to four times a month at the entrance or exit door to cover for other employees. *Id.* at 60:22-62:10.

Although Costco maintains job descriptions which detail the duties assigned to Member Service Assistants, it appears that there is a variation in the manner in which the job is actually performed. To demonstrate this variation, Costco submitted several declarations. For example, Bill Walker worked as a Member Service Assistant at the Oxnard warehouse for 28 years. Ex. 15 to Schroeder Decl. ("Walker Decl.") ¶ 2, ECF 44-2. He has almost exclusively worked at the entrance door. *Id.* ¶ 3. On the other hand, some employees may choose to work only at the exit door. *See* Hernandez Decl. ¶ 3. As another example, Francisco Fruto, a Member Service Assistant at the Chino Hills warehouse, performs floor walks for most of his time instead of staying at the doors. *See* Ex. 6 to Schroeder Decl. ("Fruto Decl.") ¶¶ 2–7, ECF 44-2. Another Member Service Assistant at the Chino Hills warehouse, Gary Gomez, uses a wheelchair and

---

[1] The Great Oaks warehouse is located about 10 miles away from the Santa Clara warehouse. Mot. 5.

performs jobs including picking trash, pushing carts to members, and rolling electric carts to plug them in. Ex. 7 to Schroeder ("Gomez Decl.") ¶¶ 2, 6–7, ECF 44-2. Some employees who are not classified as a Member Service Assistant have filled in at the doors. *See* Castro Decl. ¶ 3; Marmon Decl. ¶ 2; Richards Decl. ¶ 3.

### B. Procedural Background

Canela filed this action on July 1, 2013. Her complaint asserts only one cause of action: violation of California Labor Code § 1198.[2] Compl. ¶ 9. According to the complaint, § 1198 does not permit an employer to employ a worker "under conditions of labor that are prohibited by [an] applicable wage order." *Id.* The applicable wage order at issue is Wage Order 7-2001 ("Seating Wage Order"). Section 14 of that order provides that:

> **14. Seats**
> (A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.
>
> (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

Cal. Code Regs. tit. 8, § 11070; *see* Compl. ¶ 9. The complaint alleges the one cause of action as a PAGA claim under a class action. Compl. ¶¶ 8–17. Specifically, Canela initially sought to represent "[a]ll employees of Costco who at any time, within the applicable period of limitations, have been designated as [a] member service [assistant] and have, within California, been assigned to work either as a greeter or as an exit checker, and were not provided with a seat." *Id.* ¶ 15.

On August 2, 2013, Costco removed the action to this District under the Class Action Fairness Act ("CAFA"). Notice of Removal, ECF 1. Thereafter, the action was stayed for over two years pending the California Supreme Court's issuance of an order answering suitable seating questions certified by the Ninth Circuit in *Kilby v. CVS Pharmacy* (12-56130) and *Henderson v.*

---

[2] Section 1198 provides that "[t]he maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Cal. Lab. Code § 1198.

*JPMorgan Chase* (13-56095). *See* ECF 26. The stay was lifted on May 5, 2016. *Id.*

On September 20, 2017, the parties filed a joint status report. ECF 34. Canela reported that she would not seek class certification and suggested that this Court lacks subject matter jurisdiction for that reason. *Id.* The Court ordered the parties to brief whether this Court retained jurisdiction. ECF 35. After reviewing the parties' briefs, the Court concluded that subject matter jurisdiction exists because Canela's representation that she would not seek class certification does not divest this Court's jurisdiction over this action that was properly removed under CAFA. ECF 41. Based on Canela's failure to seek class certification, Costco filed its motion for partial summary judgment.

### C. PAGA Actions

In 2003, California enacted PAGA to permit "aggrieved employees, acting as private attorneys general," to bring lawsuits against employers for Labor Code violations. *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009). The goal was to foster compliance with state labor laws. *Id.* Thus, PAGA provides that an "aggrieved employee" may bring an action "on behalf of himself or herself and other current or former employees" to recover civil penalties for violations of the Labor Code. Cal. Lab. Code § 2699. Where the Labor Code does not set forth its own penalty, PAGA sets forth a civil penalty of 100 dollars for each aggrieved employee per pay period for the initial violation and 200 dollars for each aggrieved employee per pay period for each subsequent violation. *Id.* § 2699(f)(2). "Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency [("LWDA")], leaving the remaining 25 percent for the 'aggrieved employees.'" *Arias*, 46 Cal. 4th at 980–81. An employee suing under PAGA "does so as [a] proxy or agent of the state's labor law enforcement agencies." *Id.* at 986.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Partial summary judgment that falls short of a final

United States District Court
Northern District of California

determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary,* 699 F. Supp. 756, 759 (N.D. Cal. 1987).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell,* 547 U.S. 518, 559-60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Celotex*, 477 U.S. at 325; *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 250 (internal quotation marks omitted). If the nonmoving party's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Mere conclusory, speculative testimony in affidavits and moving papers is also insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

The Court may generally consider matters properly subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In her opposition, Canela requests that the Court take judicial notice of the tentative order dated February 1, 2018 in *Hall v Rite Aid*

*Corporation*, San Diego Superior Court Case No. 37-2009-00087938-CU-OE-CTL, which became the final order (Ex. 7 to Decl. of McInerney, ECF 45-2). Opp'n 17, ECF 45. Canela's request to take judicial notice is GRANTED, as the document is a matter of public record and Costco does not dispute its authenticity. Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). While the document is accepted as what it represents, any specific fact findings and legal conclusions set forth in that document may not bind this Court.

## III.    DISCUSSION

Costco moves for partial summary judgment that: (1) Canela lacks standing in federal court under Article III of the U.S. Constitution to represent unnamed third parties; (2) Canela cannot represent unnamed third parties in federal court without Rule 23 certification; and (3) Canela cannot represent unnamed third parties at trial because her representative claims in this action are unmanageable. Mot. 2–3; Proposed Order, ECF 44-3. The first two issues are legal issues and do not depend on a material dispute of fact. Partial summary adjudication may be granted on a purely legal issue. Fed. R. Civ. P. 56 ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). For the reasons stated below, the Court DENIES Costco's motion.

### A.    Article III Standing

Costco argues that Canela lacks Article III standing to represent unnamed third parties in this action. Mot. 10. As mentioned, Canela asserts a representative PAGA claim and seeks to represent "[a]ll employees of Costco who at any time, within the applicable period of limitations, have been designated as [a] member service [assistant] and have, within California, been assigned to work either as a greeter or as an exit checker, and were not provided with a seat." Compl. ¶ 15. Costco contends that Canela cannot do so because she failed to obtain Rule 23 class certification. Mot. 11–13. According to Costco, allowing Canela to assert a representative PAGA claim (as opposed to advancing only her individual PAGA claim) would violate Article III standing requirements—unless she had relied on the class action exception—because she was not injured by Costco's failure to provide seats to other employees. *Id.* at 10–12. Costco further argues that

PAGA actions are neither *qui tam* actions nor *parens patriae* actions which may qualify as exceptions to the Article III standing. *Id.* at 13–17.

Canela responds that she has Article III standing in view of the Ninth Circuit's decision in *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015). Opp'n 5. In particular, Canela points to *Sakkab*'s statement that "the California Supreme Court has explained[] [that] a PAGA action is a form of qui tam action." *Sakkab*, 803 F.3d at 439–40 (citing *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014)). Canela then quotes the California Supreme Court's discussion on PAGA and *qui tam* actions in *Iskanian*. Opp'n 6 (quoting *Iskanian*, 59 Cal. 4th at 382, 386). In Canela's view, PAGA actions are a form of *qui tam* actions and she need not obtain class certification because PAGA claims involve the state's interests. *See* Opp'n 5–6; Hearing Tr. 20:6–10, ECF 50. Canela also argues that if she does not have Article III standing, the Court should remand the action to state court (Opp'n 5), where she is not required to obtain class certification to assert representative PAGA claims. Costco disagrees and contends that this case must proceed as an individual PAGA action. Reply 13–14, ECF 46. The parties dispute whether there can be an individual suit under PAGA. Opp'n 7; Reply 13–14.

The law regarding PAGA actions and Article III standing is unsettled. Courts in the Ninth Circuit are divided on whether a plaintiff may bring representative PAGA claims without obtaining class action certification. As Costco discusses in its motion, a number of courts have decided that a plaintiff lacks standing to assert PAGA claims on behalf of absent employees without obtaining Rule 23 class certification. Mot. 11–13 (citing *Taylor v. West Marine*, 2014 WL 1248162, at *2 (N.D. Cal. March 26, 2014); *Adams v. Luxottica U.S. Holdings Corp.*, 2009 WL 7401970, at *6 (C.D. Cal. July 24, 2009); *Raphael v. Tesoro Refining and Marketing Co. LLC*, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015); *Ivey v. Apogen Technologies, Inc.*, 2011 WL 3515936, at *3 (S.D. Cal. Aug. 10, 2011)). For example, in *Taylor*, the court held that the plaintiff could not amend the complaint to add PAGA claims without satisfying the pleading requirements of Rule 23. 2014 WL 1248162, at *1. The court reasoned that the plaintiff would lack standing to pursue PAGA claims absent Rule 23 certification. *Id.*, at *2. Other cases cited by Costco—*Adams*, *Raphael*, and *Ivey*—reach the same conclusion.

To the contrary, other courts have concluded the opposite and held that a plaintiff has standing to pursue PAGA claims without satisfying Rule 23 requirements. *See, e.g.*, *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 810 (N.D. Cal. 2015); *Moua v. Int'l Bus. Machines Corp.*, No. 5:10-CV-01070, 2012 WL 370570, at *3–4 (N.D. Cal. Jan. 31, 2012); *Zayers v. Kiewit Infrastructure W. Co.*, No. 16CV06405, 2017 WL 7058141, at *8 (C.D. Cal. Nov. 9, 2017), *on reconsideration in part sub nom.*, 2018 WL 582318 (C.D. Cal. Jan. 18, 2018). In particular, *Achal* disagreed with courts that have held that class certification is necessary based on the premise that PAGA claims are brought on behalf of other aggrieved employees rather than as a law enforcement action representing the interests of the state. 114 F. Supp. 3d at 810. Considering the *qui tam* aspects of PAGA claims as well as estoppel effects, *Achal* held that PAGA claims are essentially law enforcement actions that do not implicate the Article III standing issue. *Id.* at 807–810.

The Ninth Circuit has not addressed the issue whether a PAGA plaintiff has Article III standing to represent unnamed employees. But it is well established that citizen-relators who bring *qui tam* actions on behalf of the government have Article III standing. *See Vt. Agency of Natural Res. v. United States ex. rel. Stevens*, 529 U.S. 765, 777–78 (2000) ("We think this history well nigh conclusive ... it leaves no room for doubt that a qui tam relator under the FCA has Article III standing."). Thus, if Canela's position is correct that a PAGA action is a form of *qui tam* action, a PAGA plaintiff does not lack standing to bring a representative PAGA claim regardless of class certification. Costco does not argue otherwise except that it believes that PAGA actions are not *qui tam* actions (*see* Mot. 14–16). The Court turns to the California Supreme Court's characterization of PAGA because it is the final arbiter on state law.

Contrary to Costco's contention (Mot. 14), the Court concludes that PAGA actions are appropriately considered to be like *qui tam* actions when determining the plaintiff's standing. The California Supreme Court has clearly recognized a PAGA suit as "a type of *qui tam* action" brought by "private attorneys general." *Iskanian*, 59 Cal. 4th at 363. As discussed earlier, the California legislature enacted PAGA to permit "aggrieved employees, acting as *private attorneys general*," to bring lawsuits against employers for Labor Code violations in order to foster

8

compliance with state labor laws. *Arias*, 46 Cal. 4th at 980 (emphasis added). An employee suing under PAGA "does so as [a] proxy or agent of the state's labor law enforcement agencies." *Id.* at 986. As an action for recovering civil penalties, a PAGA suit "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Id.* More recently, recognizing that "civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities," the California Supreme Court concluded that "[a] PAGA representative action is therefore a type of *qui tam* action." *Iskanian*, 59 Cal. 4th at 382. The court further acknowledged that PAGA conforms to the traditional criteria of *qui tam* actions except that a portion of the penalty goes not only to the citizen-relator but to all employees affected by the Labor Code violation. *Id.* As Canela points out in her opposition, the Ninth Circuit in *Sakkab* recognized the California Supreme Court's characterization of a PAGA action as a form of *qui tam* action. Opp'n 5 (citing *Sakkab*, 803 F.3d at 439–40).

Costco vigorously disagrees that PAGA actions are like *qui tam* actions. Costco contends that *Sakkab*'s statement that "likened a PAGA claim to a qui tam claim" was dictum. Mot. 16. In Costco's view, the Ninth Circuit made such a statement only in dictum to bolster the view that PAGA has a central role in enforcing California's labor laws and is not preempted by the Federal Arbitration Act ("FAA"). *Id.* During the hearing, Costco further elaborated that the "*qui tam*" label is relevant only to the extent that the interest of the state is involved and the fact that *qui tam* actions existed long before the FAA. Hearing Tr. 6:8–15. In other words, Costco appears to argue that PAGA's *qui tam* attributes are relevant only on the issue of whether the FAA preempts PAGA. *See* Mot. 16; Hearing Tr. 6:16–21; Reply 2 (arguing that "*Iskanian* and *Sakkab* simply address whether arbitration agreements can waive the right to bring representative PAGA actions").

The Court is unpersuaded by Costco's narrow reading of *Iskanian* and *Sakkab* as to the *qui tam* nature of PAGA actions. In particular, the California Supreme Court's holding that a PAGA representative action is a "type of *qui tam* action" is based on the fact that PAGA allows recovery of "civil penalties . . . on behalf of the state," which were "previously enforceable only by the

state's labor law enforcement agencies." *Iskanian*, 59 Cal. 4th at 381–82. This underlying reasoning is not limited only to the issue of FAA preemption. Moreover, such a characterization of PAGA is consistent with the California Supreme Court's recognition that an employee sues under PAGA as an "agent of the state's labor law enforcement agencies" and the PAGA suit "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Arias*, 46 Cal. 4th at 986. For these reasons, the Court is unpersuaded by Costco's argument that *Iskanian* and *Sakkab*'s *qui tam* "analogy" is relevant only to the FAA context but not to the Article III context (*see* Reply 2–3). In fact, it is implausible to suggest that the Ninth Circuit and the California Supreme Court would abandon their reasoning in *Sakkab* and *Iskanian* under different factual scenarios.

To be sure, as Costco argues, some courts have recognized that although "a PAGA representative claim may bear some resemblance to a federal *qui tam* action, there are also critical differences." Mot. 13 (quoting *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1082 (N.D. Cal. 2015)). In *Nanavati*, the court explained that PAGA suits are different from *qui tam* actions under the False Claims Act in that an aggrieved employee has complete control over his or her PAGA action. 99 F. Supp. 3d at 1083. On this basis, the court declined to follow *Iskanian*'s holding that the FAA does not preempt state law that prohibits waiver of PAGA representative actions. *Id.* at 1081. However, later in *Sakkab*, the Ninth Circuit reached a different conclusion. 803 F.3d at 439 (holding that "the FAA does not preempt the *Iskanian* rule"). Thus, *Nanavati* is limited by the Ninth Circuit's holding in *Sakkab*. The Court therefore is unpersuaded by Costco's reliance on *Nanavati*.

Costco raises several additional arguments why it believes that PAGA actions are not *qui tam* actions. The Court addresses those arguments below.

First, Costco asserts that while "the *qui tam* statute itself contains assignment language" that assigns "a private person to bring a civil action . . . in the name of the Government," PAGA provides only an "alternative" to a state enforcement action where "a civil action [may] be brought by an aggrieved employee on behalf of himself or herself and other current or former employees." Mot. 14 (internal citations omitted) (alteration in original). In other words, Costco contends that

10

PAGA actions are not like *qui tam* actions because the PAGA statute does not provide for an "assignment." *Id.* Here, Costco points to the Federal False Claims Act which provides that a private plaintiff may bring a *qui tam* civil action "in the name of the Government." 31 U.S.C. § 3730. However, Costco does cite to any authority holding that a statute must use the magic language "in the name of the Government" (or a similar phrase) to be like a *qui tam* statute. Such a rigid qualification is not included in the requirements discussed by the California Supreme Court. *See Iskanian*, 59 Cal. 4th at 382 ("Traditionally, the requirements for enforcement by a citizen in a qui tam action have been (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty."). The California Supreme Court held that "PAGA conforms to these traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation." *Id.* In fact, the Labor Code's "alternative" procedure permitting an aggrieved employee to bring a civil action satisfies one of the factors in the traditional requirements. *Id.* ("Traditionally, the requirements for enforcement by a citizen in a qui tam action [include] . . . in some way, the informer be authorized to bring suit to recover the penalty."). The Court therefore rejects Costco's argument.

Second, Costco asserts that "proving a *qui tam* claim—unlike proving a PAGA claim—requires proof of injury to the government." Mot. 14. In Costco's view, proving a PAGA claim does not require a showing that the state was harmed. *Id.* The Court disagrees. Here, the state is harmed by an employer's violations of the Labor Code. And PAGA was enacted to remedy that harm and facilitate the recovery of civil penalties that otherwise would have been collected by the state's LWDA. *Arias*, 46 Cal. 4th at 986. For that reason, "[t]he government entity on whose behalf the plaintiff files [the PAGA] suit is always the real party in interest in the suit." *Iskanian*, 59 Cal. 4th at 382.

Third, Costco claims that PAGA does not preclude multiple PAGA suits based on the same act. Mot. 15 (citing *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1013 (N.D. Cal. 2016)). On this premise, Costco argues that PAGA actions are not *qui tam* actions because, if they were, "concurrent PAGA actions covering the same claim would not be allowed." *Id.* For support,

Costco points to California's False Claims Act which provides that "[w]hen a person brings [a false claims] action under this subdivision, no other person may bring a related action based on the facts underlying the pending action." Cal. Gov't Code § 12652(c)(10). The Court is unpersuaded by this argument. While the California legislature decided to bar concurrent "false claims" *qui tam* actions, Costco does not point to any authority that established a categorical rule that bars concurrent *qui tam* actions. No such requirement is set forth in the three traditional factors discussed in *Iskanian*. *See* 59 Cal. 4th at 382. Moreover, *Tan* recognizes that a judgment in one PAGA action may bar another pending PAGA action. 171 F. Supp. 3d at 1013. As such, there would be no inconsistent judgments even if there were concurrent suits at an earlier time. For these reasons, the Court finds that the mere fact that concurrent PAGA actions may be litigated does not preclude such actions from being akin to *qui tam* actions.

Fourth, Costco argues that the fact that PAGA expressly provides that 25 percent of the civil penalties is awarded to all aggrieved employees show that PAGA suits are not *qui tam* actions. Mot. 15. Costco contends that this portion of the penalties is distributed to aggrieved employees for violations committed against them. *Id.*; *see* Hearing Tr. 5:24–6:3. The Court disagrees that this aspect of PAGA proves that a PAGA suit is not a type of *qui tam* action. "The purpose of . . . PAGA is not to recover damages or restitution, but to create a means of 'deputizing' citizens as private attorneys general to enforce the Labor Code." *Reyes v. Macy's, Inc.*, 202 Cal. App. 4th 1119, 1123 (Cal. Ct. App. 2011) (citation omitted). In other words, "[t]he employee's recovery is thus an incentive to perform a service to the state, not restitution for wrongs done to members of the class." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014). Therefore, the Court concludes that it is more appropriate to view the 25% of civil penalties awarded to all aggrieved employees to have attributes of an incentive award. Even if that percentage of penalties were in some respect remedial in nature, this result would not change the *qui tam* nature of PAGA actions. In *Iskanian*, the Supreme Court recognized that a "portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation" but nevertheless held that a "PAGA representative action is therefore a type of *qui tam* action." *Iskanian*, 59 Cal. 4th at 382.

Costco also asserts that PAGA suits are not *qui tam* actions because the Labor Code or Wage Order provision protects the rights of employees but not those of the state.  Reply 3.  Following this reasoning, Costco contends that when the LWDA brings a claim, the LWDA is not enforcing its right but the employees' rights.  *Id.*  On this basis, Costco asserts that PAGA does not provide an "assignment."  *Id.*  The Court is unpersuaded because Costco focuses only on the underlying Labor Code or Wage Order provision in which the state enforcement agencies may bring an action.  Here, the implicated legal interest is the state's right to enforce the labor law and collect civil penalties as authorized by the state legislature.  The California Supreme Court has made this clear.  *Arias*, 46 Cal. 4th at 986 ("In a lawsuit brought under [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies— namely, *recovery of civil penalties* that otherwise would have been assessed and collected by the Labor Workforce Development Agency." (emphasis added))

Finally, Costco argues that PAGA's purpose to "help California enforce its labor laws" is irrelevant to whether a PAGA plaintiff has Article III standing to represent unnamed employees.  Reply 4.  This argument, however, does not overcome the fact that the California Supreme Court has held that a PAGA representative action is a type of *qui tam* action.  *Iskanian*, 59 Cal. 4th at 382.

For the foregoing reasons, the Court concludes that the *qui tam* attributes of PAGA actions confer Article III standing to a plaintiff who has not obtained class action certification.  Accordingly, Costco's motion for summary judgment that Canela lacks standing in federal court under Article III of the U.S. Constitution to represent unnamed third parties is DENIED.

### B.    Representative PAGA Actions and Rule 23

Costco seeks summary judgment that Canela cannot represent unnamed third parties in federal court absent Rule 23 certification because federal procedural law governs this action.  Mot. 17–20.  For support, Costco relies on *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010) which held that a New York law prohibiting certain claims from being maintained as class actions was preempted by Rule 23.  *Id.* at 17–18.  According to Costco, PAGA is procedural statute, *id.* at 18 (citing *Amalgamated Transit Union, Local 1756, AFL–CIO v.*

*Superior Court,* 46 Cal.4th 993, 1003 (2009)), and thus Rule 23 must apply when PAGA actions are litigated in federal court, *see id.* at 18–19. Costco further contends that it does not matter that PAGA was enacted to help enforce California's labor laws or that "part of [the] recovery will go to the State." *Id.* at 18. Some district courts have agreed with Costco's position. *Id.* at 19 (citing *Fields v. QSP, Inc.*, 2012 WL 2049528, at *5 (C.D. Cal. June 4, 2012); *Halliwell v. A-T Solutions*, 983 F. Supp. 2d 1179, 1183–84 (S.D. Cal. Nov. 7, 2013)).

Canela responds that the Ninth Circuit in *Sakkab* indicated that a PAGA claim can move forward in federal court without class certification. Opp'n 8; *Sakkab*, 803 F.3d at 436 (quoting *Baumann*, 747 F.3d at 1122–23). Canela points out that, contrary to the cases cited by Costco, more recent cases have held that PAGA actions do not require Rule 23 certification. Opp'n 8 (citing *Zayers v Kiewit Infrastructure West Co*., No. 16-CV-06405-PSG (PJW), 2017 WL 7058141 at *8 (C.D. Cal. Nov. 9, 2017); *Zackaria v Wal-Mart Stores, Inc*., 142 F.Supp.3d 949, 956–57 (C.D. Cal. 2015); *Jordan v. NCI Grp., Inc.*, No. EDCV161701, 2017 WL 1821122, at *4 (C.D. Cal. Mar. 22, 2017)); *see also Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 809–10 (N.D. Cal. 2015).

It is unsettled whether Rule 23 class certification is required to sustain a PAGA suit in federal court. As reflected by the diverging case law cited by the parties, district courts have split on their approach. The Ninth Circuit has not directly addressed this issue. The primary disagreement between the courts is based on the application of the Supreme Court's opinion in *Shady Grove*. That case involved a New York law which prohibited class actions in suits seeking penalties or statutory minimum damages. *Shady Grove*, 559 U.S. at 406. The issues were whether Rule 23 conflicted with the New York law, and if so, whether Rule 23 exceeded the authorization of the Rules Enabling Act or Congress' rulemaking power. *Id.* at 398. The Supreme Court held that the New York law conflicted with Rule 23 for two reasons: (1) the provisions addressed the same question—certifiability of class actions; and (2) the New York law conflicted with Rule 23 because the New York law prohibited certain class actions which Rule 23 allowed. *Id.* at 399–400. As the next step, the Supreme Court concluded that Rule 23 was not ultra vires. *Id.* at 407–10. In doing so, *Shady Grove* applied the following framework. "[F]irst, determin[e] whether the federal

14

and state rules can be reconciled (because they answer different questions), and second, if they cannot, determin[e] whether the Federal Rule runs afoul of [the Rules Enabling Act]." *Id. at* 398, 410–11. When there is no direct conflict between the federal and state rules in the first step, "the policies behind *Erie*" control whether the state law should apply in federal court. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980).

In applying the first step of the *Shady Grove* framework, the Court finds that PAGA can be reconciled with Rule 23. Rule 23 addresses the requirements that a lawsuit must satisfy in order to proceed as a class action, whereas PAGA addresses how an aggrieved employee may bring "a law enforcement action" as an "agent of the state's labor law enforcement agencies," *Arias*, 46 Cal. 4th at 981, 986 ("[A]n action to recover civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." (internal quotation marks omitted)). As such PAGA and Rule 23 are directed to different questions. Indeed, the California Supreme Court and Ninth Circuit have recognized that PAGA representative actions are different from class actions. *Id.* at 982, 986 (holding that a PAGA action need not be brought as a class action where the PAGA plaintiff is suing as an agent of the state); *Baumann*, 747 F.3d at 1124 ("Rule 23 and PAGA are more dissimilar than alike. A PAGA action is at heart a civil enforcement action filed on behalf of and for the benefit of the state, not a claim for class relief.").

Contrary to Costco's contention (Mot. 19), there is no conflict between PAGA and Rule 23. In *Shady Grove*, the New York law conflicted with Rule 23 because the New York law prohibited a plaintiff from pursuing certain class actions that would have been allowed under Rule 23 if the certification requirements were met. 559 U.S. at 399–400. That is not the situation here. PAGA implicates only how a plaintiff may bring a PAGA action—a "type of *qui tam* action" (*Iskanian*, 59 Cal. 4th at 382)—and it does not bar the plaintiff from pursuing PAGA claims as a class action. So long as the Rule 23 requirements are satisfied, the matter may be litigated as a class action with the protections provided by Rule 23. In addition, Costco's argument that "Rule 23 would prohibit the maintenance of a class action in circumstances where PAGA would permit one" is unconvincing. Mot. 19 (quoting *Medlock v. Taco Bell Corp.*, 2014 WL 4319510 (E.D. Cal. Aug. 29, 2014)). PAGA *does not* permit a class action where Rule 23 would prohibit one because a

15

PAGA claim by itself is not a class claim. *See Baumann*, 747 F.3d at 1123–24; *Arias*, 46 cal. 4th at 934 ("[A]n action to recover civil penalties is fundamentally a law enforcement action." (internal quotation marks omitted)); *Estate of Harrington v. Marten Transp., Ltd.*, No. CV 15-1419, 2017 WL 5513635, at *6 (C.D. Cal. Nov. 6, 2017) ("[A]lthough PAGA actions are *representative* actions, they are not *class actions*." (emphasis in original)).

Costco asserts that *Baumann* does not undercut its position. Mot. 19; Reply 5. To be sure, *Baumann* addressed a statutory construction issue and did not decide whether Rule 23 class certification is required to advance a PAGA suit in federal court. Nevertheless, the Ninth Circuit in *Baumann* clearly opined that PAGA and Rule 23 are markedly different. *Baumann*, 747 F.3d at 1123–24. The Ninth Circuit's reasoning lends support to the above analysis that PAGA and Rule 23 are directed to different questions.

As there is no direct conflict between PAGA and Rule 23, the policies behind *Erie* control whether PAGA is applicable in federal court. *Walker*, 446 U.S. at 752. As mentioned above, Costco claims that the procedural aspect of PAGA requires the application of Rule 23 in PAGA actions. Mot. 18. Costco relies on *Amalgamated Transit* to argue that PAGA is a procedural statute. *Id. Amalgamated Transit* addressed whether PAGA is "substantive" as to the issue of *assigning* a claim for penalties. *See* 46 Cal.4th at 1003. The California Supreme Court answered in the negative on the grounds that PAGA allows an aggrieved employee to recover civil penalties and that "the right to recover a statutory penalty may not be assigned." *Id.* However, *Amalgamated Transit* did not decide whether PAGA was "substantive" for purposes of applying the *Erie* doctrine. Indeed, the fact that PAGA is not "substantive" in a sense that PAGA does not create an assignable property right does not mean that the statute is procedural for purposes of *Erie*. *See Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 809 (N.D. Cal. 2015). As the court in *Achal* recognized, "PAGA and *qui tam* actions provide a procedural mechanism that has been 'characterized as a substantive right to pursue a claim for relief.'" *Id.* at 809 (citing *Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-2122, 2013 WL 3233211, at *7 (C.D. Cal. June 25, 2013)). On this basis, *Achal* followed other courts that have held that "PAGA is 'substantive' for the purposes of *Erie* because it gives plaintiffs a 'right to recover' in specified circumstances." *Id.* at 810. The

1  Court agrees with *Achal*. To conclude otherwise that PAGA does not apply in federal court would

2  contravene *Erie*'s core policies because the result would lead to "inequitable administration" of

3  the law and substantially different results in state and federal court. *Walker*, 446 U.S. at 745, 747

4  (holding that the state service law should apply in federal court because otherwise the result would

5  lead to an "inequitable administration" of the law).

6       In its reply, Costco asserts that cases that characterize PAGA as "substantive" are faulty.

7  Reply 6. Under the logic of those cases, Costco argues, "a class action statute would also be

8  substantive, as it is a procedural mechanism that creates a right to pursue a claim for relief." *Id.*

9  Costco's argument is unconvincing. Rule 23 does not "create" a right to pursue a claim for relief.

10  Rather, it permits a plaintiff to enforce his or her "preexisting" right through a class action vehicle.

11  *Shady Grove*, 559 U.S. at 408 ("A class action, no less than traditional joinder (of which it is a

12  species), merely enables a federal court to adjudicate claims of multiple parties at once."). In

13  contrast, PAGA—like a *qui tam* statute—confers a plaintiff the state's right to sue for civil

14  penalties. The fundamental problem with Costco's position is that it ignores the *qui tam* nature of

15  PAGA actions. As discussed earlier, the Court agrees with other courts that have concluded that a

16  PAGA representative action is a "type of *qui tam* action." *Iskanian*, 59 Cal. 4th at 382. On this

17  basis alone, Costco's argument fails. In fact, Costco admits that "Rule 23 does not apply in *qui*

18  *tam* claims." Reply 6 n.1; Mot. 19 n.6.

19       Costco further argues that the state's purpose in enacting PAGA is irrelevant. In support,

20  Costco quotes *Shady Grove*: "it is not the substantive or procedural nature or purpose of the

21  affected state law that matters, but the substantive or procedural nature of the Federal Rule." 559

22  U.S. at 410. This portion of *Shady Grove* explains that the validity of a Federal Rule does not

23  depend on the "substantive or procedural nature or purpose of the affected state law." *Id.* But the

24  validity of Rule 23 is not at issue here. Therefore, this argument is largely irrelevant.

25       For the above reasons, the Court concludes that a plaintiff is not required to obtain Rule 23

26  class certification to assert PAGA claims in federal court. Accordingly, Costco's motion for

27  summary judgment that Canela cannot represent unnamed third parties because she did not obtain

28  Rule 23 class certification is DENIED.

### C. Manageability

Costco seeks summary judgment that Canela cannot represent unnamed third parties at trial because her representative claims are unmanageable. Mot. 20–24. Costco argues that district courts have inherent power to dismiss representative PAGA claims where a trial would be unmanageable. *Id.* at 20 (citing cases striking representative PAGA claims as unmanageable). Citing *Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1 (2016), Costco claims that "suitable seating cases" require individualized inquires and that the Court has to look at the actual tasks performed by each individual. Mot. 20–21. On this premise, Costco further asserts that individualized inquiries on the following issues would render trial unmanageable: (1) nature of the work performed at Costco's entrance and exit doors, (2) effects that sitting would have on customer service, (3) who worked at which door for what duration, and (4) who has been provided a seat at the doors. *Id.* at 21–24.

In *Kilby*, the California Supreme Court described the factors to consider when determining whether "the nature of the work reasonably permits the use of seats" as set forth in 14(A) of the Seating Wage Order. 63 Cal. 4th at 8. Courts must consider the "nature of the work" and the "total tasks and duties by location." *Id.* at 18. Specifically, courts should look into "the actual tasks performed, or reasonably expected to be performed, not to abstract characterizations, job titles, or descriptions that may or may not reflect the actual work performed." *Id.* To show that the nature of the work "reasonably permits" the use of seats, the plaintiff must demonstrate that "the relevant tasks, grouped by location," can be performed while seated, addressing "considerations of feasibility," which include "an assessment of whether providing a seat would unduly interfere with other standing tasks, whether the frequency of transition from sitting to standing may interfere with the work, or whether seated work would impact the quality and effectiveness of overall job performance." *Id.* at 20. *Kilby* further held that other relevant considerations include "[a]n employee's duty to provide a certain level of customer service" and "the physical layout of a workspace." *Id.* at 21–22.

Canela responds that *Kilby* made clear that "the nature of the work" and whether the work "reasonably permits the use of seats" are not decided based upon how some individual employees

perform the job. Opp'n 13; *see also id.* at 9–13 (discussing *Kilby*). According to Canela, "one looks at the *reasonable* expectations of the employer and how the employees commonly do the job" in suitable seating cases. *Id.* (emphasis in original). Canela further asserts that the California Supreme Court in *Kilby* focused on the common tasks performed by employees. *Id.* In her view, if the California Supreme Court believed that "the seating law had to be analyzed in terms of how each individual employee did the job at each different outlet or how each customer would feel about each employee using a seat, the [California Supreme] Court could have simply thrown up its hands and taken the day off." *Id.*

Canela further counters that the concept of manageability does not apply to PAGA actions. First, Canela asserts that the application of manageability derives from class action law but that PAGA actions are distinct from class actions. *Id.* at 13. Second, she argues that the PAGA statute does not include manageability requirements. *Id.* Third, according to Canela, the Department of Labor Standards Enforcement ("DLSE") is not subject to any manageability criteria when it assesses whether an employer violated the Labor Code or Wage Orders. *Id.* For this reason, Canela believes that a private PAGA plaintiff is also not subject to any manageability requirement. *Id.* For support, she points out that some courts have declined to impose a manageability requirement on a representative PAGA claim. *See, e.g.*, *Zayers*, 2017 WL 7058141, at *8–9.

To address any concerns on managing trial, Canela also submitted her trial plan.[3] Opp'n 15–16. In particular, Canela states that she will provide representative evidence of common tasks and their frequency by analyzing videotape records obtained from Costco's stores. *Id.* at 15. She also plans to have ergonomists testify about the wide choices of lean stools that have been available to Costco and the benefits of providing employees the option to sit or stand. *Id.* at 15–16. Canela states that she intends to provide survey evidence that will show that customers will not be offended by seeing seated employees. *Id.* at 16.

---

[3] The Court advises the parties that Canela's trial plan (Opp'n 15–16) is entirely unrealistic. This Court requires all evidence to be submitted orally through witness testimony or reading deposition testimony into the record. Exhibits may only be offered through testifying witnesses. Moreover, the Court will determine reasonable time limits for presentation of each side's case at the final pretrial conference. The Court does not receive homework assignments from counsel.

In addition, Canela rebuts factual assertions raised in Costco's motion. Opp'n 16–23. To the extent that the parties' arguments raise a dispute of material fact as to the nature of the employees' work or whether such work reasonably permits the use of seats, the Court need not discuss the arguments in detail because the issue presented in Costco's motion is whether Canela's representative action is manageable. Indeed, Costco confirms that it is not seeking a ruling on the merits as to whether Costco violated the Seating Wage Order. Reply 7.

The Court finds it unnecessary to determine whether manageability is a prerequisite to all PAGA representative claims because, even if that were the case, Costco has not sufficiently shown that Canela's representative action would be unmanageable as explained below.

Costco argues that *Kilby* requires the Court to "look at the actual tasks performed by each individual who worked at the entrance or exit door." Mot. 21. For support, Costco points out that *Kilby* referred to "an employee's" tasks and duties by location and need for a seat when analyzing whether "the nature of the work reasonably permits the use of seats." Reply 7 (citing *Kilby*, 63 Cal.4th at 8). To be sure, *Kilby* held that a court must consider an employee's *actual* tasks and duties by location. *Id.* at 18 ("[C]onsideration of all the *actual* tasks performed at a particular location would allow the court to consider the relationship between the standing and sitting tasks done there, the frequency and duration of those tasks with respect to each other. . . ." (emphasis added)).

*Kilby*, however, did not hold that a PAGA plaintiff must proffer direct proof of the actual tasks and duties by location for each and every aggrieved employee during trial. The California Supreme Court, in discussing whether the "nature of the work reasonably permits the use of seats" by referring to "an employee," did not address whether the proof of actual tasks and duties could be assessed through representative evidence. Costco contends that *Kilby* rejected Canela's argument that "a court may look at the common denominator of tasks" as being a "task-by-task evaluation of whether a single task may feasibly be performed seated." Reply 8. However, when *Kilby* rejected the "task-by-task evaluation of whether a single task may feasibly be performed seated," the California Supreme Court was disapproving the suggestion that the examination of a single task (without considering other duties of the employee) would be sufficient to determine the

20

"nature of the work." *Kilby*, 63 Cal. 4th at 18 ("Plaintiffs' proposed examination of individual tasks in isolation is inconsistent with the . . . reasonableness standard. Under this approach, if any single task could be performed while seated, an employee would be entitled to a seat, even if the duration and frequency of the seated task is negligible."). The Court does not understand that Canela is arguing that she can satisfy her burden at trial by focusing at isolated tasks. In fact, Canela represents that she will proffer representative evidence regarding common actual tasks and their frequency by analyzing surveillance videos obtained from Costco's stores. Opp'n 15. That analysis would consider a range of actual tasks that employees have performed as opposed to focusing on "isolated tasks" or abstract job descriptions.

While *Kilby* is silent on whether a PAGA plaintiff may prove her case based on representative evidence, it does not preclude such an approach. Costco has not pointed to any authority showing that there is a categorical rule that bars representative evidence in PAGA actions. The Court also notes that the California Supreme Court in *Arias* held that PAGA actions may be brought as class actions. *Arias*, 46 Cal. 4th at 981 n.5. To the extent that Costco contends that a PAGA plaintiff must provide direct evidence on actual tasks for each and every aggrieved employee during trial, that contention may render PAGA class actions meaningless. Here, the Court is unable to conclude that Canela cannot provide evidence showing that other aggrieved employees are or were entitled to seats. As discussed in her opposition, Canela intends to proffer representative evidence of the employees' actual tasks and frequency by analyzing videotape records obtained from Costco's stores. Opp'n 15. Such evidence might be sufficient to satisfy *Kilby*. (The Court does not make a determination here.)

The Court next turns to other arguments raised by Costco. In its motion, Costco submits evidence in support of its position that Canela's representative action involves highly individualized inquiries. Costco first asserts that employees have performed different tasks in varying manners at its doors. For example, Canela did not perform certain duties such as plugging in electric carts whereas employees like Gomez did perform that task. Canela Dep. 59:5–6; Gomez Decl. ¶ 7. As another example, Costco asserts that some employees primarily worked at the entrance door while some rarely worked at the doors. Mot. 21–22 (citing Walker Decl. ¶ 3; Fruto

21

Decl.¶¶ 2–6). Relying on these differences, Costco argues that individualized assessments of each employee would render this case unmanageable. *Id.* at 22. The Court, however, does not find that these variations provide a sufficient basis to grant summary judgment that Canela's representative action is unmanageable under the circumstances. As discussed above, Canela may be able to provide sufficient representative evidence that satisfies the inquiry required under *Kilby*. Moreover, "every PAGA action in some way requires *some* individualized assessment regarding whether a Labor Code violation has occurred." *Plaisted v. Dress Barn, Inc.*, No. 2:12-CV-01679, 2012 WL 4356158, at *2 (C.D. Cal. Sept. 20, 2012) (emphasis in original). As such, holding that a PAGA action cannot be maintained because it may involve some individual assessments would obliterate the purpose of PAGA. *See id.*

According to Costco, the effect that sitting would have on customer service would vary depending on the member base of each warehouse. Mot. 22. For support, Costco submits the declaration of Chris Marmon who is the General Manager at Costco's Rancho Cucamonga warehouse. *Id.* In his declaration, Mr. Marmon states that he believes that some members at his warehouse would be appalled to see employees using stationary seats at the doors. On the other hand, Canela submitted the declaration of Michael J. O'Neil, an expert who surveyed members at two Costco warehouses. Opp'n 22. The survey results indicate that many members do not mind whether employees are seated or standing. *See* Ex. 4 to McInerney Decl. ("O'Neil Decl."), ECF 45-2. Costco counters that the surveys actually highlight the need for individual inquiries on the effect of seating on customer service. Reply 11. The Court, however, finds that the evidence at best shows that there is a dispute of material fact whether the effect of seating on customer service varies by warehouse location and member base. As such, this issue does not support the contention that Costco is entitled to summary judgment.

Costco further asserts that individualized inquires would be required to find out who worked at which door for what duration and who has been provided a seat at the doors. Mot. 23–24. Because Canela's complaint asserts only 14(A) of the Seating Wage Order for entrance door workers but both 14(A) and 14(B) for exist door workers, Costco avers that it must be determined whether an employee worked at either the entrance or exit door. *Id.* at 23. As there is no

centralized record showing which employees worked at a specific door, Costco asserts that the resulting inquires would render the representative action unmanageable. *Id.* at 23–24. In other words, Costco argues that the difficulty in identifying the aggrieved employees warrants dismissal of Canela's representative PAGA claim. *See id.* at 24. But "[a]t trial, plaintiff may prove that defendant violated the California Labor Code with respect to the employees it describes as 'aggrieved employees,' some of the employees, or he may not prove any violations at all. [T]he fact that proving his claim may be difficult or even somewhat burdensome for himself and for defendant does not mean that he cannot bring it at all." *Zackaria*, 142 F. Supp. 3d at 959. As such, the Court is unpersuaded by Costco's argument.

In addition, Canela counters Costco's above assertion by arguing that Costco is at fault for failing to track which employees worked at the entrance or exit doors (at least since February 2013 when Costco receive Canela's pre-filing PAGA notice letter). Opp'n 17. According to Canela, courts have shifted the burden of proof to an accused employer who did not keep records even if it was not required to do so. *Id.* at 18 (citing *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1185–91 (Cal. Ct. App. 2008)). Indeed, *Amaral* recognized that "courts may alter the normal allocation of the burden of proof" depending on the facts and circumstances. *Amaral*, 163 Cal. App. 4th at 1188. Costco argues that *Amaral* is inapplicable here because that court applied burden shifting for the purpose of proving damages and where the parties had unequal access to that evidence. Reply 13. The Court need not determine whether Costco should bear any burden because this issue is not present in Costco's motion for summary judgment. At best, Canela raises a dispute on fact which precludes summary judgment on the grounds that individualized inquiries on the employees' work record would render this representative action unmanageable.

Based on the above reasons, the Court concludes that Costco has not shown that Canela's representative action is necessarily unmanageable. While Costco has raised strong arguments, the Court is unable to conclude that Canela cannot provide evidence showing that other aggrieved employees were entitled to seats under the Seating Wage Order. Accordingly, Costco's motion for summary judgment that Canela cannot represent unnamed third parties at trial because her representative claims are unmanageable is DENIED.

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Costco's motion for summary judgment that Canela lacks standing in federal court under Article III of the U.S. Constitution to represent unnamed third parties is DENIED.

(2) Costco's motion for summary judgment that Canela cannot represent unnamed third parties because she did not obtain Rule 23 class certification is DENIED.

(3) Costco's motion for summary judgment that Canela cannot represent unnamed third parties at trial because her representative claims are unmanageable is DENIED.

**IT IS SO ORDERED.**

Dated: May 23, 2018

BETH LABSON FREEMAN
United States District Judge